UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAYARTO PERKINS,

        Plaintiff,        Case No. 2:11-cv-271

v.        Honorable Robert Holmes Bell

E. JACOBSON, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Tussing, Jondreau, and Larson. The Court will serve the complaint against the remaining Defendants.

**Discussion**

    I.        Factual allegations

Plaintiff Shayarto Perkins filed this civil rights action against Defendants Resident Unit Officer E. Jacobson, Corrections Officer Unknown Collins, Resident Unit Officer Unknown Tollefson, Corrections Officer Unknown Welton, Corrections Officer Unknown Stevens, Corrections Officer Unknown Van Wagner, Corrections Officer Unknown Kempinen, Corrections Officer Unknown Rule, Corrections Officer Unknown Majurin, Corrections Officer M. Joyal, Assistant Resident Unit Supervisor Unknown Sweeney, Resident Unit Officer Unknown Cummings, Sergeant Unknown Brendal, Captain Unknown Chappel, Assistant Resident Unit Supervisor T. Gajewski, Lieutenant Unknown Koskinen, Lieutenant Unknown Perry, Corrections Officer Unknown Bouchard, Corrections Officer Petrikas, Food Steward Unknown Carlson, Resident Unit Officer Unknown Kinnunen, Resident Unit Officer Unknown Tussing, Assistant Deputy Warden Unknown Jondreau, and Deputy Warden Unknown Larson.

In Plaintiff's complaint, he alleges that on November 1, 2010, Defendant Collins grabbed and felt his penis while performing a body search. Plaintiff asserts that Defendant Collins made sexual comments regarding his penis and told Plaintiff that if he reported the incident and did not drop his pending complaints against staff, that Plaintiff would suffer more than he already was suffering as a result of complaining about staff. Plaintiff states that he was not deterred and reported the incident.

On December 15, 2010, Plaintiff was moved from housing unit 7 to housing unit 6, which is more restrictive. Plaintiff claims that this move was in retaliation for his conduct in complaining about staff. Plaintiff asserts that prisoners in unit 6 receive more misconduct reports,

especially from Defendant Jacobson, who is the Resident Unit Officer of the unit, and that staff in unit 6 are more corrupt. Plaintiff states that he remained in unit 6 until March 18, 2011, when he was "set up" by Defendant Jacobson and moved to segregation. On January 17, 2011, Defendants Jacobson and Tollefson gave Plaintiff a large envelope, which had been removed from his cell and contained letters and pictures from Plaintiff's family and friends. Plaintiff states that all of the letters and pictures had been torn up into pieces inside the envelope. Defendants Jacobson and Tollefson laughed and bragged to Plaintiff that Defendants Welton, Stevens, Van Wagner, Kempinen and Rule had told them to tear up the pictures and letters in order to "teach Plaintiff a lesson" for filing complaints on them and other staff. They also told Plaintiff that he would receive more of the same treatment if he continued to file complaints on staff.

On January 27, 2011, Defendant Majurin told Plaintiff that he and Defendants Joyal, Sweeney, and Cummings had been observing Plaintiff and wanted Plaintiff to engage in sexual acts with them. Plaintiff refused and Defendant Majurin told Plaintiff that they would make things more difficult for him. Plaintiff complained about this incident to Defendants Brendel, Chappel, Gajewski, Koskinen, and Perry. On February 3, 2011, Defendant Gajewski spoke with Plaintiff and told him that she and Defendants Brendel, Chappel, Koskinen, and Perry were aware of his complaints, and that many of the male officers and other male staff at AMF are racist and / or homosexuals and seek to engage in sexual misconduct with prisoners. Defendant Gajewski told Plaintiff that she, Brendel, Chappel, Koskinen, and Perry were not going to do anything about Defendants Majurin, Joyal, Sweeney, or Cummings because they supported their co-workers. Defendant Gajewski also told Plaintiff that if he persisted in complaining about staff, he would soon

be placed in segregation and that staff would tamper with his food trays. Defendant Gajewski threatened to write a misconduct ticket on Plaintiff if he did not drop his complaints.

On February 12, 2011, Defendant Jacobson made a death threat on Plaintiff and boasted that Defendants Bouchard, Petrikas and Carlson were members of the Ku Klux Klan (KKK), and had connections to other white supremacist groups. Defendant Jacobson quoted Defendants Bouchard, Petrikas and Carlson as stating that all "niggers" should be exterminated and that they were working on creating an incident where one of the gun towers would "blow Plaintiff's brains out," which would end Plaintiff's complaints. Defendant Jacobson added that he would love to see that happen. On March 18, 2011, Plaintiff was placed in segregation on "trumped up" information and continues to be subjected to numerous retaliatory acts, including having his food trays tampered with by Defendant Kinnunen and other staff. Finally, Plaintiff claims that he made Defendants Tussing, Jondreau, and Larson aware of the corruption of staff but that they refused to take corrective action.

Plaintiff claims that Defendants' conduct violated his rights under the First and Eighth Amendments. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff's claims against Defendants Tussing, Jondreau, and Larson are based on their failure to act on his complaints regarding the conduct of other staff. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436

U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory

official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Tussing, Jondreau, and Larson were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Tussing, Jondreau, and Larson had in this action involve the denial of administrative grievances or the failure to act. Defendants Tussing, Jondreau, and Larson cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Tussing, Jondreau, and Larson are properly dismissed for lack of personal involvement.

Plaintiff also makes a conclusory assertion that he is entitled to a temporary restraining order to "immediately address the emergency unconstitutional conditions Plaintiff is under, and that afterwards this court schedule a hearing to show cause why a preliminary injunction should not issue." The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2. Whether the movant has shown irreparable injury.
>
> 3. Whether the preliminary injunction could harm third parties.
>
> 4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). A review of the materials of record fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights. Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief. Plaintiff's complaint fails to show that he has suffered or will suffer any physical injury as a result of Defendants' conduct. Plaintiff's claim that he is being confined to segregation and his conclusory assertion that his food trays are being "tampered" with are insufficient to show irreparable harm.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is

necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here.

Because Plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, his request for a temporary restraining order / preliminary injunction will be denied.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Tussing, Jondreau, and Larson will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Jacobson, Collins, Tollefson, Welton, Stevens, Van Wagner, Kempinen, Rule, Majurin, Joyal, Sweeney, Cummings, Brendal, Chappel, Gajewski, Koskinen, Perry, Bouchard, Petrikas, Carlson, and Kinnunen.

An Order consistent with this Opinion will be entered.


Dated: October 17, 2011                               /s/ Robert Holmes Bell
                                                      ROBERT HOLMES BELL
                                                      UNITED STATES DISTRICT JUDGE