UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAYARTO PERKINS,

        Plaintiff,        Case No. 2:11-cv-271

v.        Honorable Robert Holmes Bell

E. JACOBSON, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Shayarto Perkins, a former inmate who is currently on parole, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Resident Unit Officer E. Jacobson, Corrections Officer Unknown Collins, Resident Unit Officer Unknown Tollefson, Corrections Officer Unknown Welton, Corrections Officer Unknown Stevens, Corrections Officer Unknown Van Wagner, Corrections Officer Unknown Kempinen, Corrections Officer Unknown Rule, Corrections Officer Unknown Majurin, Corrections Officer M. Joyal, Assistant Resident Unit Supervisor Unknown Sweeney, Resident Unit Officer Unknown Cummings, Sergeant Unknown Brendel, Captain Unknown Chappell, Assistant Resident Unit Supervisor T. Gajewski, Lieutenant Unknown Koskinen, Lieutenant Unknown Perry, Corrections Officer Unknown Bouchard, Corrections Officer Petrikas[1], Food Steward Unknown Carlson, Resident Unit Officer Unknown Kinnunen, Resident Unit Officer Unknown Tussing, Assistant Deputy Warden Unknown Jondreau and Deputy Warden Unknown Larson.

---

[1]This defendant's name is actually spelled Patrikus.

Plaintiff's complaint alleges that on November 1, 2010, while he was confined at the Baraga Maximum Correctional Facility (AMF), Defendant Collins grabbed and felt his penis while performing a body search. Plaintiff asserts that Defendant Collins made sexual comments regarding his penis and told Plaintiff that if he reported the incident and did not drop his pending complaints against staff, that Plaintiff would suffer more than he already was suffering as a result of complaining about staff. Plaintiff states that he was not deterred and reported the incident.

On December 15, 2010, Plaintiff was moved from housing unit 7 to housing unit 6, which is more restrictive. Plaintiff claims that this move was in retaliation for his conduct in complaining about staff. Plaintiff asserts that prisoners in unit 6 receive more misconduct reports, especially from Defendant Jacobson, who is the Resident Unit Officer of the unit, and that staff in unit 6 are more corrupt. Plaintiff states that he remained in unit 6 until March 18, 2011, when he was "set up" by Defendant Jacobson and moved to segregation. On January 17, 2011, Defendants Jacobson and Tollefson gave Plaintiff a large envelope, which had been removed from his cell and contained letters and pictures from Plaintiff's family and friends. Plaintiff states that all of the letters and pictures had been torn into pieces inside the envelope. Defendants Jacobson and Tollefson laughed and bragged to Plaintiff that Defendants Welton, Stevens, Van Wagner, Kempinen and Rule had told them to tear up the pictures and letters in order to "teach Plaintiff a lesson" for filing complaints on them and other staff. They also told Plaintiff that he would receive more of the same treatment if he continued to file complaints on staff.

On January 27, 2011, Defendant Majurin told Plaintiff that he and Defendants Joyal, Sweeney and Cummings had been observing Plaintiff and wanted Plaintiff to engage in sexual acts with them. Plaintiff refused and Defendant Majurin told Plaintiff that they would make things more difficult for him. Plaintiff complained about this incident to Defendants Brendel, Chappel,

Gajewski, Koskinen and Perry. On February 3, 2011, Defendant Gajewski spoke with Plaintiff and told him that she and Defendants Brendel, Chappel, Koskinen and Perry were aware of his complaints, and that many of the male officers and other male staff at AMF are racist and / or homosexuals and seek to engage in sexual misconduct with prisoners. Defendant Gajewski told Plaintiff that she, Brendel, Chappel, Koskinen and Perry were not going to do anything about Defendants Majurin, Joyal, Sweeney, or Cummings because they supported their co-workers. Defendant Gajewski also told Plaintiff that if he persisted in complaining about staff, he would soon be placed in segregation and that staff would tamper with his food trays. Defendant Gajewski threatened to write a misconduct ticket on Plaintiff if he did not drop his complaints.

On February 12, 2011, Defendant Jacobson made a death threat on Plaintiff and boasted that Defendants Bouchard, Patrikus and Carlson were members of the Ku Klux Klan (KKK), and had connections to other white supremacist groups. Defendant Jacobson quoted Defendants Bouchard, Patrikus and Carlson as stating that all "niggers" should be exterminated and that they were working on creating an incident where one of the gun towers would "blow Plaintiff's brains out," which would end Plaintiff's complaints. Defendant Jacobson added that he would love to see that happen. On March 18, 2011, Plaintiff was placed in segregation on "trumped up" information and continues to be subjected to numerous retaliatory acts, including having his food trays tampered with by Defendant Kinnunen and other staff. Finally, Plaintiff claims that he made Defendants Tussing, Jondreau and Larson aware of the corruption of staff but that they refused to take corrective action.

Plaintiff claims that Defendants' conduct violated his rights under the First and Eighth Amendments. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

On October 17, 2011, the court dismissed Plaintiff's claims against Defendants Tussing, Jondreau and Larson with prejudice for failure to state a claim upon which relief may be granted (docket #4 and #5). Presently before the Court is a Motion for Summary Judgment filed by Defendants Brendel, Carlson, Chappell, Collins, Cummings, Gajewski, Jacobson, Joyal, Kinnunen, Koskinen, Majurin, Patrikus, Perry, Rule, Stevens, Sweeney, Tollefson and Van Wagner pursuant to Fed. R. Civ. P. 56 (docket #50). Plaintiff has filed a response (docket #52) and Defendants have replied to the response (docket #56). Therefore, the matter is now ready for decision.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue

of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Brendel, Carlson, Chappell, Collins, Cummings, Gajewski, Jacobson, Joyal, Kinnunen, Koskinen, Majurin, Patrikus, Perry, Rule, Stevens, Sweeney, Tollefson and Van Wagner assert that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

As noted above, Plaintiff claims that Defendant Collins grabbed and felt his penis while performing a body search. Plaintiff also asserts that Defendant Collins made sexual comments regarding his penis. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Federal courts have held that minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand,

touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

In his affidavit, Defendant Collins denies touching Plaintiff's genital area during the search. (Docket #51-3, ¶ 4.) In his response, Plaintiff merely reasserts the allegations in his complaint. Plaintiff also offers the affidavit[2] of inmate Cornell Meeks #576800, who attests that Defendant Collins bragged to him about grabbing Plaintiff's penis. (Docket #53-1.) In the opinion of the undersigned, while it is a very close question, I conclude that Plaintiff has raised a genuine issue of fact regarding whether Defendant Collins violated Plaintiff's Eighth Amendment rights.

Plaintiff also alleges that on January 27, 2011, Defendant Majurin told Plaintiff that he and Defendants Joyal, Sweeney and Cummings had been observing Plaintiff and wanted Plaintiff to engage in sexual acts with them. Plaintiff refused and Defendant Majurin told Plaintiff that they would make things more difficult for him. Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000

---

[2]Defendants assert that because the affidavits are not notarized, they are not admissible evidence and should not be considered by the court in deciding this motion for summary judgment. However, the lack of notarization does not preclude the court from considering the affidavits. *Muhammad v. Close*, 2009 WL 8755520, 1 (6th Cir. 2009) (*citing Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 475 (6th Cir.2002)).

WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain). Therefore, Plaintiff's Eighth Amendment claims against Defendants Majurin, Joyal, Sweeney and Cummings lack merit.

Defendants also assert that Plaintiff's allegations against Defendant Kinnunen do not rise to the level of an Eighth Amendment violation. As noted above, Plaintiff claims that Defendant Kinnunen tampered with his food tray in retaliation for filing complaints. In his response, Plaintiff states that food was removed from his tray, and at times, what appeared to be cleaning solution and feces was placed into Plaintiff's food. Plaintiff also states that Defendant Kinnunen told him that he had tampered with his food.

In Defendant Kinnunen's affidavit, he denies tampering with Plaintiff's food. Defendant Kinnunen states that if Plaintiff had made him aware of any problem with his food trays, he would have contacted food services for a new tray. (Docket #51-9, ¶ 4.) Furthermore, as noted by Defendants in their brief, Plaintiff fails to allege that he ever went hungry or that he became sick from any alleged tampering. In the opinion of the undersigned, Plaintiff's allegation that Defendant Kinnunen placed feces and cleaning solution into his food, if true, is sufficient to show an Eighth Amendment violation.

Defendants next assert that they are entitled to summary judgment on Plaintiff's retaliation claims. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be

able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendants Rule, Stevens and Van Wagner instructed Defendants Jacobson and Tollefson to destroy pictures in order to teach him a lesson for filing complaints on staff. Defendants Rule, Stevens and Van Wagner have all filed affidavits attesting that they never instructed staff to retaliate against Plaintiff. (Docket #51-11, #51-12 and #51-13.) In addition, Defendants Jacobson and Tollefson deny destroying Plaintiff's property. (Docket #51-14 and #51-15.) Plaintiff responds to Defendants' contentions by reasserting the allegations set forth in his complaint. In addition, Plaintiff offers the affidavit of inmate Fulton Boyd #172201. Mr. Boyd attests that he observed that on January 17, 2011, he observed Defendants Jacobson and Tollefson give Plaintiff an envelope. When Plaintiff opened the envelope, he asked Defendants Tollefson and Jacobson why they had torn up his letters and pictures, and they responded by stating that they had been told to do so by Defendants Welton, Stevens, Van Wagner, Kempinen and Rule. (Docket #53-2.) In the opinion of the undersigned, there is a genuine issue of material fact regarding whether Defendants Rule, Stevens, Van Wagner, Jacobson and Tollefson retaliated against him for filing complaints. Therefore, these Defendants are not entitled to summary judgment on this issue.

Plaintiff claims that Defendants Majurin, Joyal, Cummings and Collins retaliated against Plaintiff for refusing their sexual advances and that Majurin threatened to "make sure that things Plaintiff was being subjected to because of his complaints would get worse." Plaintiff also alleges that Defendant Collins threatened to retaliate against him if Plaintiff reported him for grabbing Plaintiff's penis. Defendants assert that this is insufficient to show retaliation. As noted by Defendants, Plaintiff does not allege that Defendants Joyal and Cummings threatened him, only

that Defendants Collins and Majurin threatened him. Defendant Majurin denies asking Plaintiff to engage in sexual conduct or making the threatening statement toward Plaintiff. (Docket #51-4, ¶ 3.)

In his response, Plaintiff asserts that Defendant Majurin not only threatened him, but that he followed through on his threats by writing a fabricated misconduct on Plaintiff. However, Plaintiff fails to allege any specific facts regarding the supposed misconduct ticket, including when it was written, what the charge was for, or whether he was found guilty. Nor does Plaintiff allege that Defendant Collins followed through on his threat to retaliate against Plaintiff for reporting that he had grabbed Plaintiff's penis by taking any adverse action against Plaintiff.

Plaintiff attaches the affidavit of inmate Fulton Boyd #172201, who attests that on January 27, 2011, he overheard Defendant Majurin making the alleged statements to Plaintiff. (Docket #53-3.) Plaintiff also offers the affidavit of inmate Nicholas Roberson #290290, who attests that on June 17, 2011, he witnessed Plaintiff give a written complaint to Defendant Gajewski. He also overheard Plaintiff complaining that staff were making homosexual advances toward him. Defendant Gajewski responded by giving Plaintiff a misconduct for insolence. (Docket #53-4.) The undersigned concludes that although there is evidence showing that Defendant Majurin threatened him on January 27, 2011, there is no indication that Defendants Majurin, Joyal, Cummings and Collins actually took any adverse action against Plaintiff in retaliation for refusing to engage in sexual conduct with him and other staff. Therefore, Plaintiff's retaliation claims against Defendants Majurin, Joyal, Cummings and Collins are properly dismissed.

In his complaint, Plaintiff alleges that Defendant Gajewski refused to discipline staff that were sexually harassing him, and that on March 18, 2011, he was placed in segregation on "trumped up false information," just as Defendant Gajewski had threatened (docket #1, ¶ 19). In response to this assertion, Defendant Gajewski attest that Plaintiff received a threatening behavior

- 10 -

ticket from Defendant Jacobson, which resulted in Plaintiff being moved from Unit 6 General Population to Unit 2 Temporary Segregation. Defendant Gajewski had no involvement with the misconduct ticket or the decision to place Plaintiff in segregation. The first record that Defendant Gajewski has of an interaction with Plaintiff is of an interview with Plaintiff on April 28, 2011. During the next five months, Defendant Gajewski's records show that Plaintiff filed numerous grievances on a variety of issues. On June 17, 2011, Defendant Gajewski wrote a misconduct on Plaintiff for comments that he made to her during "legal" rounds. Plaintiff subsequently refused to speak to her and stopped all outgoing mail for some time. (Docket #51-18, ¶¶ 5-8.) A copy of the Major Misconduct Summary Report for the pertinent time period shows that Plaintiff was found guilty of the March 18, 2011, misconduct. (Docket #51-19.) Where plaintiff is ultimately found guilty of misconduct charges, plaintiff cannot state a claim for retaliation arising from the misconduct charges. *Wilson v. Phipps*, No. 97-1661, 1998 WL 384560, at *1 (6th Cir. June 18, 1998) (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam)). The undersigned concludes that the record does not support Plaintiff's claim that Defendant Gajewski retaliated against him in violation of the First Amendment.

Plaintiff alleges that Defendants Jacobson, Carlson and Patrikus threatened to kill Plaintiff in retaliation for his use of the grievance system. Plaintiff alleges that on February 12, 2011, Defendant Jacobson told Plaintiff that Defendants Bouchard, Patrikus and Carlson were members of the Ku Klux Klan (KKK), and had connections to other white supremacist groups. Defendant Jacobson quoted Defendants Bouchard, Patrikus and Carlson as stating that all "niggers" should be exterminated and that they were working on creating an incident where one of the gun towers would "blow Plaintiff's brains out," which would end Plaintiff's complaints. Defendant Jacobson added that he would love to see that happen.

Initially, the undersigned notes that this claim does not implicate the Eighth Amendment because allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir. 1985).

Defendants note that Plaintiff's allegations do not actually show that Defendant Jacobson threatened Plaintiff, but rather that he merely related the comments of Defendants Bouchard, Carlson and Patrikus to Plaintiff, and indicated that he would like to see this happen. In addition, Defendants state that the only indication that Plaintiff had that Defendants Bouchard, Carlson and Patrikus actually made these statements was that Defendant Jacobson told Plaintiff about the alleged statements. There is no evidence that a plan ever existed to have an incident occur in one of the gun towers which would "blow Plaintiff's brains out." Nor is there any evidence that these Defendants actually belong to the KKK. Defendants Jacobson, Bouchard, Carlson and Patrikus all offer affidavits in which they deny ever making the alleged statements, belonging to the KKK, or planning an incident where one of the gun towers would "blow Plaintiff's brains out." (Docket #51-15, #51-16, and #51-17.)

A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so

*de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542. In this case, a statement by one official that some other officials were working on creating an incident where one of the gun towers would "blow Plaintiff's brains out" is best construed as harassment, rather than as an actual threat of harm. Contrary to Defendants' assertion, such conduct is sufficiently adverse to deter a person of ordinary firmness from filing grievances. Therefore, Defendants Jacobson, Carlson and Patrikus are not entitled to summary judgment on this claim.

Plaintiff asserts claims of conspiracy against numerous Defendants. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944. In this case, Plaintiff failed to allege any facts indicating that Defendants shared a single plan.

Plaintiff alleges that he made Defendants Brendel, Carlson, Chappell, Gajewski and Koskinen aware of the sexual harassment by Defendants Majurin, Joyal, Sweeney and Cummings, and that they refused to take any corrective action. Plaintiff also claims that Defendants Carlson and Patrikus were planning to create an incident where one of the gun towers would shoot Plaintiff, and that Defendant Jacobson approved of the plan. However, as noted above, the record does not support the underlying claims. Therefore, Defendants Brendel, Carlson, Chappell, Gajewski, Koskinen, Majurin, Joyal, Sweeney, Cummings, Carlson, Patrikus and Jacobson are entitled to summary judgment on these claims.

However, as noted above, there is an issue of fact regarding Plaintiff's claim that Defendants Rule, Stevens, Van Wagner, Jacobson and Tollefson retaliated against him by destroying his pictures and personal papers. In the opinion of the undersigned, there is also an issue of fact regarding whether these Defendants engaged in this conduct as part of a conspiracy to retaliate against Plaintiff.

Defendants Brendel, Chappell, Gajewski, Koskinen and Perry assert that they are entitled to summary judgment because they were not personally involved in the underlying misconduct. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim

requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

The record shows that Defendants Brendel, Chappell, Gajewski, Koskinen and Perry were not personally involved in the activity which forms the basis of Plaintiff's claims. Plaintiff contends that they failed to take corrective action when he informed them of misconduct by their subordinates. The only roles Defendants Brendel, Chappell, Gajewski, Koskinen and Perry had in this action involve the denial of administrative grievances or the failure to act. Defendants Brendel, Chappell, Gajewski, Koskinen and Perry cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Brendel, Chappell, Gajewski, Koskinen and Perry are properly dismissed for lack of personal involvement.

Finally, to the extent that Plaintiff is asserting a violation of his equal protection rights, Defendants state that they are entitled to summary judgment. The Equal Protection Clause

of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).

To establish a violation of the Equal Protection Clause, a prison inmate must prove that a discriminatory intent or purpose against a disfavored class or excluded group was a factor in an action taken by prison officials. *See McCleskey v. Kemp*, 481 U.S. 279 (1987); *Heckler v. Mathews*, 465 U.S. 728 (1984); *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 265 (1977). The typical case involves allegations that state officials have discriminated on the basis of race or gender. In the instant action, Plaintiff states that he is black, but fails to allege any facts showing that he was treated differently than other similarly situated persons on the basis of his race. Plaintiff does claim that Defendant Jacobson referred to him as a "nigger" and indicated that Defendants Bouchard, Patrikus and Carlson were members of the Ku Klux Klan (KKK). However, the use of racial slurs, without harassment or some other conduct that deprives the victim of established rights, fails to state a claim for violation of the Equal Protection Clause. *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999); *Williams v. Kaufman County*, 86 F. Supp. 2d 586, 598 (N.D. TX, Feb. 7, 2000); *Oliver v. Cuttler*, 968 F. Supp. 83, 88 (E.D. N.Y., May 24, 1997). Therefore, in the opinion of the undersigned, Plaintiff has failed to state a viable equal protection claim.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999);

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated as to Defendants Brendel, Chappell, Cummings, Gajewski, Joyal, Koskinen, Majurin, Perry and Sweeney, they are entitled to qualified immunity. However, because there is an issue of fact regarding whether Defendants Rule, Stevens, Van Wagner, Jacobson, Tollefson, Carlson, Patrikus, Collins and Kinnunen violated Plaintiff's constitutional rights, they are not entitled to qualified immunity.

In summary, in the opinion of the undersigned, Defendants Brendel, Chappell, Cummings, Gajewski, Joyal, Koskinen, Majurin, Perry and Sweeney are entitled to summary judgment. However, because there is an issue of fact regarding Plaintiff's retaliation claims against Defendants Jacobson, Carlson and Patrikus, Plaintiff's conspiracy and retaliation claims against Defendants Rule, Stevens, Van Wagner, Jacobson and Tollefson, and Plaintiff's Eighth Amendment

claims against Defendants Collins and Kinnunen, they are not entitled to summary judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #50) be granted, in part, and denied with regard to Plaintiff's retaliation claims against Defendants Jacobson, Carlson and Patrikus, Plaintiff's conspiracy and retaliation claims against Defendants Rule, Stevens, Van Wagner, Jacobson and Tollefson, and Plaintiff's Eighth Amendment claims against Defendants Collins and Kinnunen.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: May 22, 2013